IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SMARTVUE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:11-cv-01145 |
| | ) | |
| MISTRAL SOFTWARE PVT. LTD. and | ) | Judge Sharp |
| NEST POWER ELECTRONICS PVT. LTD., | ) | Magistrate Judge Griffin |
| | ) | |
| Defendants. | ) | |

## INITIAL CASE MANAGEMENT ORDER

**A. JURISDICTION AND VENUE:** The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant Nest Power Electronics Pvt. Ltd. ("Nest") removed this action from the Chancery Court of Davidson County, Tennessee, pursuant to 28 U.S.C. § 1446. Venue is proper pursuant to 28 U.S.C. §1391. Nest has filed a Rule 12 motion to dismiss for lack of personal jurisdiction and on the basis of forum non conveniens. By agreement of the parties, the response to Nest's motion is due February 6, 2012. Nest's reply, if any, shall be due by February 16, 2012. Defendant Mistral Software Pvt. Ltd.[1] also raised the issue of insufficient jurisdiction in its Answer and as an Affirmative Defense.

**B. BRIEF THEORIES OF THE PARTIES:**

**1. PLAINTIFF THEORY:**

Defendants breached their contracts with Smartvue Corporation. Plaintiff Smartvue entered in a contract with Mistral in which Mistral agreed in exchange for development fees to perform certain hardware, software and product development and design services in connection with Smartvue's S8 Camera Module and S Network Video

---

[1] As explained in Mistral's Answer, the accuracy of this party designation is disputed.

Recorder Module, and an essential part of their development was that they could be manufactured in high volume. The contract provides that Tennessee law will apply to the contract. After what Smartvue believed was a successful development of the S8 Network Video Recorder and S8 Camera and, Mistral introduced Smartvue to Nest as the recommended manufacturer.

After reviewing Smartvue's design specifications developed by Mistral, Nest approved the design for manufacture and informed Smartvue that Nest could manufacture the S8 Network Video Recorder and S8 Camera. Smartvue gave Nest two purchase orders based on quotes provided by Nest.

Nest was unable to manufacture a properly working S8 Network Video Recorder and therefore could not meet the production demands placed upon it. Nest blamed Mistral on the completion delays of the orders because of a faulty design of the S8 Network Video Recorder. Mistral blamed Nest on poor manufacturing of the designed product. In addition to issues with the S8 Network Video Recorders, Nest was late delivering the S8 Cameras as well.

Smartvue made several efforts to address the issues regarding the S8 Network Video Recorder by visiting Nest's manufacturing facilities and having engineers from Mistral meet with Nest. Both Mistral and Nest gave assurances that issues would be addressed.

By April 2009, Smartvue concluded, however, that production failures would not be fixed quickly. Smartvue then informed Mistral that it was suspending payment of any maintenance service fees until the problem was fixed. Smartvue ultimately determined that Mistral and Nest would not be able to correct the problems with the S8 Network

Video Recorder or the S8 Camera and terminated and cancelled the Purchase Orders. As a result of not receiving a properly designed S8 Network Video Recorder and the timely manufacture of the S8 Network Video Recorder and S8 Camera to specification, or even on a delayed schedule, Smartvue was unable to fulfill a number of customer orders. Smartvue does not anticipate being able to win back these customer orders either, causing significant damage to Smartvue. Either one or both Defendants are responsible for the damages to Smartvue.

The Contract between Smartvue and Mistral provides for general indemnity by Mistral to Smartvue resulting from any breach by Mistral of "any covenant, representation or warranty made" by Mistral in the Contract.

To the extent Smartvue may be liable to Nest for any claim arising from Smartvue's cancellation of the purchase orders, Mistral must indemnify Smartvue, including its reasonable attorneys' fees.

**2. DEFENDANTS' THEORY:**

**a) Mistral's theory.** Mistral was retained by Smartvue to perform certain work related to development of a camera and video recorder module. It performed this work in accordance with the agreed specifications. Though Smartvue alleges that Mistral's work was faulty and that it was an "essential part" of the agreement that the video recording module and camera be designed to "be manufactured in high volume," neither of these claims are accurate or supported by the facts.

After the initial development of the camera and video recorder, Mistral and Smartvue entered into several additional agreements. It was under these agreements that Mistral provided technical support to Nest, which it did properly in accordance with the

agreement between the parties. Mistral disputes that any aspect of its design or other services was flawed.

Mistral additionally disputes that it is under any obligation to indemnify Smartvue and is not in possession of a signed agreement requiring indemnification or arbitration of the Complaint's claims. Mistral also challenges the propriety of the jurisdiction and venue on the basis that it was an Indian company sought out by Smartvue for work to be performed in India and did not avail itself to jurisdiction in Tennessee.

Mistral has asserted a Counterclaim for its damages but only seeks to have it considered if the Court finds it has jurisdiction over the parties and the dispute in the original Complaint. With regard to its contingent Counterclaim, Smartvue failed to honor the terms of its subsequent agreements with Mistral, through which Mistral was to be a licensed manufacturer and reseller of the Smartvue camera and video recorder, as well as other equipment. Mistral honored its portion of the agreements, paid Smartvue a significant sum, and expended significant resources in preparation to market the product. Smartvue breached the contract, failed to make Mistral its licensed manufacturer and reseller, and failed to reimburse Mistral's advance payment as required by the contract. As a result of Smartvue's false statements to Mistral and breaches of the applicable contracts, Smartvue failed to compensate Mistral for its services, failed to reimburse Mistral for amounts advanced, and caused Mistral to suffer economic loss related to monies expended preparing to be Smartvue's licensed reseller.

**b) Nest's theory.**

According to the Complaint, Smartvue entered into a Product Development Agreement with Nest's co-defendant Mistral. Smartvue further alleges that "Mistral

agreed to develop the S8 Camera Module ("S8 Camera") and S8 Network Video Recorder Module, and an essential part of their development was that they could be manufactured in high volume." The problem for Smartvue is that it was in such a hurry to bring its wireless camera based surveillance-and-security system to market that it decided to begin manufacturing the products before the design was finalized. Not surprisingly, this rush to market resulted in negative consequences. What is surprising, however, is that Smartvue blames Nest.

Smartvue's relationship with Nest is embodied in a series of quotes and purchase orders between them. Under Nest's quotes, Nest's liability is limited. Nest's sole warranty is that the products will have been manufactured in accordance with Customer's applicable specifications. Nest met that requirement. Moreover, Nest's liability, if any, is "limited to the cost of repairing or replacing the defective products at [Nest's] works." Thus, Smartvue's claims for consequential damages are barred. There is no contrary language in Smartvue's purchase orders.

Because Smartvue cancelled the purchase orders without a prior breach by Nest, Smartvue is liable for the full amount of the purchase orders. In addition, under the clear terms and conditions issued by Nest, Smartvue is liable for materials purchased by Nest and its suppliers to manufacture the products. The terms and conditions provide that the Customer (Smartvue) "acknowledges and accept[s] full material liability for all conditions listed below:

- Material is designated as Non-Cancelable and Non-Returnable by the component supplier (NC/NR)

- Material is Custom or Unique to Customer such that it cannot be used for any other NPE's [sic] customer or returned to the supplier.
- Material was purchased to meet safety stock levels as approved by the Customer.
- NPE is unable to mitigate Customer's liability by returning materials to component suppliers or use material for other SFO customers"

Nest preliminarily estimates that its damages are in the $2M range. Should the Court deny Nest's motion to dismiss, Nest will assert a counterclaim against Smartvue. At that time, Nest also will evaluate the need for any affirmative defenses and/or claims involving Mistral or any other entity.

C: **ISSUES RESOLVED:** None.

D. **ISSUES STILL IN DISPUTE:** All.

E. **INITIAL DISCLOSURES:** The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before February 10, 2012.

F. **DISCOVERY:** Nest has filed a Motion to Stay Discovery pending resolution of its Motion to Dismiss. Smartvue has expressed it will oppose the Motion to Stay Discovery. Defendant Mistral takes the position that issues of jurisdiction and arbitration should be resolved prior to discovery beginning. The parties shall complete all written discovery on or before October 29, 2012 and depose all fact witnesses on or before January 23, 2013. Because most of the documents and witnesses are located outside of the United States, the parties agree to work in good faith to coordinate discovery responses and deposition scheduling. At a minimum, all parties shall have at least 45 days to respond to all written discovery. Moreover, any party wishing to depose an

individual in person who resides outside the United States shall provide the witness and all other parties with at least 30 days written notice of such intent to allow the parties and counsel to make appropriate travel arrangements. Notice of 30 days is not necessary for a witness if the parties and counsel have already made plans to be at that witness's location previously scheduled for deposition for another witness. The parties shall also work in good faith in an attempt to utilize telephonic depositions where appropriate and/or to consolidate depositions into blocks of time so as to minimize the need for international travel.

No motions concerning discovery are to be filed until after the parties have conferred in good faith and if, unable to resolve their differences, have scheduled and participated in a conference telephone call with Magistrate Griffin.

**G.     THE NEED FOR COUNTER-CLAIMS, CROSS-CLAIMS, THIRD PARTY CLAIMS, AMENDED PLEADINGS, JOINDER OF PARTIES:**

Mistral has filed a counterclaim. Smartvue's response to the Counterclaim is due February 6, 2012. In the event that its Motion to Dismiss is denied, Nest anticipates filing, at a minimum, a Counterclaim against Smartvue. The need for any such additional counterclaims, cross-claims and third party claims will be determined as discovery progresses.

**H.     DISCLOSURE OF EXPERTS:** The parties bearing the burden of proof shall disclose their respective expert witnesses and their reports by December 13, 2012. Any rebuttal experts shall be identified and their reports disclosed by January 18, 2013.

**I.     DEPOSITIONS OF EXPERT WITNESSES:** All expert witnesses shall be deposed on or before March 22, 2013.

**J.      Privilege.** Pursuant to Fed. R. Evid. 502(d) and the agreement of the Parties, the Court hereby enters the following order concerning disclosure of material protected by the attorney-client privilege or work product doctrine:

(a) If, in connection with the pending litigation, a party (the "Disclosing Party") produces information subject to a claim of attorney-client privilege or attorney work product protection ("Produced Protected Information"), the production of the Produced Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Produced Protected Information and its subject matter.

(b) A Disclosing Party may assert in writing attorney-client privilege or work product protection with respect to Produced Protected Information. The Receiving Party shall, within five business days of receipt of that writing, return or destroy all copies of the Produced Protected Information and provide a certification of counsel that all such Produced Protected Information has been returned or destroyed.

(c) Within five business days of the notification that such Produced Protected Information has been returned or destroyed, the Disclosing Party shall produce a privilege log with respect to the Produced Protected Information.

(d) The receiving party may move the Court for an Order compelling production of the Produced Protected Information (a "Privilege Motion"). The Privilege Motion shall be filed under seal and shall not assert as a ground for entering such an Order the fact or circumstances of the inadvertent production.

(e) The Disclosing Party retains the burden of establishing privileged or protected nature of any Produced Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an in camera review of the Produced Protected Information.

(f) If, at trial, at a hearing, at a deposition, or on a motion, a Disclosing Party marks for identification or offers into evidence Produced Protected Information — or proffers or elicits testimonial or other evidence that incorporates or relies on Produced Protected Information, including evidence within Federal Rule of Evidence 703 — that act shall be deemed to effect a waiver and forfeiture by the Disclosing Party of attorney-client privilege and work product protection that would otherwise apply to undisclosed information concerning the same subject matter, within Federal Rule of Evidence 502(a). The preceding sentence shall not apply to (i) proceedings to determine whether the Produced Protected Information is privileged or protected or subject to discovery or disclosure, or (ii) Produced Protected Information that is marked for identification, offered into evidence, or incorporated in evidence proffered or elicited by an adverse party, or relied on by a witness proffered by an adverse party.

K. **JOINT MEDIATION REPORT:** The parties shall submit a joint mediation report explaining the parties' beliefs as to whether mediation may resolve the claims on or before June 15, 2012.

L. **DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions by April 30, 2013. Responses to dispositive motions shall be filed within twenty-one (21) days

after service/filing. Optional replies shall be filed within fourteen (14) days after service/filing of the response. Briefs shall not exceed 20 pages, without leave of court.

**M. ELECTRONIC DISCOVERY:** The parties have briefly discussed issues concerning electronic discovery and have agreed to come up with a plan on the form in which such discovery should be produced.

**N. ESTIMATED TRIAL TIME:** Defendant Mistral has demanded a jury trial. The parties expect the trial to last approximately six (6) days.

It is so **ORDERED**.

U.S. District Magistrate
Judge Juliet Griffin

**SUBMITTED FOR ENTRY:**

/s/ Salvador M. Hernandez
Timothy L. Warnock (#012844)
Salvador M. Hernandez (#020121)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
(615) 320-3737 (fax)
shernandez@rwjplc.com
Attorney for Plaintiff

/s/ Michael G. Abelow
Samuel P. Funk (No. 19777)
Michael G. Abelow (No. 26710)
Ryan T. Holt (No. 30191)
SHERRARD & ROE, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
sfunk@sherrardroe.com
mabelow@sherrardroe.com
(615) 742-4200
(615) 742-4539 (fax)

*Counsel for NeST Power Electronics Pvt. Ltd.*
/s/ Stephen D. Barham
Stephen D. Barham (No.19292)
T. Ryan Malone (No. 023762)
Chambliss, Bahner & Stophel, P.C.
1000 Tallan Building, Two Union Square
Chattanooga, TN 37402
(423)756-3000

*Attorneys for Defendant Mistral Solutions Pvt., Ltd.*