# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| SMARTVUE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-1145 |
| | ) | Judge Sharp |
| MISTRAL SOFTWARE PVT. LTD. | ) | |
| and NEST POWER ELECTRONICS | ) | |
| PVT. LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is the Motion to Dismiss (Docket No. 10) filed by Defendant Nest Power Electronics PVT., LTD. ("Nest"), which seeks dismissal of the action against it for lack of personal jurisdiction, or for *forum non conveniens*. The Motion has been fully briefed by Plaintiff Smartvue Corporation ("Smartvue") and Nest. For the following reasons, the Court will dismiss the action as to Nest for lack of personal jurisdiction.

## I. FACTUAL BACKGROUND

The following facts are drawn primarily from the Complaint, as supplemented where needed by the declarations that have filed in relation to the Motion to Dismiss.

Smartvue is incorporated in Delaware, but has its principal office in Nashville, Tennessee. It entered into a Product Development Agreement (the "Contract") with Defendant Mistral Software PVT. LTD. ("Mistral"), an engineering design house located in Bangalore, India. Under the Contract, Mistral agreed to perform product development and design services relating to the "S8 Camera Module" and "S8 Network Video Recorder Module," both of which were to be

1

manufactured for use, and marketed as a part of, Smartvue's wireless based surveillance and security system.

When Smatvue believed Mistral had successfully developed the S8 Camera and S8 Network Video Recorder, Mistral suggested Nest as a recommended manufacturer to Smartvue. Nest is an electronics manufacturer, organized and existing under the law of India. It has manufacturing facilities in Cochin, India, and Bangalore, India.

Nest was introduced to Smartvue in India, and an agent for Smartvue traveled to India to discuss the manufacturing of the equipment. After reviewing the specifications developed by Mistral, Nest informed Smartvue that it could manufacture the S8 Camera and S8 Network Video Recorder, and sent price quotations for the manufacture of 400 or 1200 cameras and 100 or 300 video cameras to Smartvue's Chief Executive Officer Martin Renkis ("Renkis") in Nashville, Tennessee. On October 30, 2008, Smartvue sent an initial purchase order to Nest.[1]

According to the Complaint, the "initial order was to be delivered on January 27, 2009, but was never completed," and a "second order was never started." (Docket No. 1-2, Complaint ¶ 10). In a declaration filed in opposition to the Motion to Dismiss, however, Renkis states that "[f]rom March 13, 2009 to June 17, 2009, Nest made approximately ten separate deliveries to Smartvue in Tennessee in response to the purchase order." (Docket No. 20, Renkis Decl. ¶ 7).

Regardless, "Nest was unable to manufacture a properly working S8 Network Video recorder and therefore could not meet the production demands placed upon it." (Docket No. 1-2, Complaint ¶ 11). Smartvue "made several efforts to address the issues regarding the S8 Network Video

---

[1] It is unclear how many purchase orders may have been issued. While the parties sometimes reference purchase orders in the plural, the record appears to contain only a copy of the October 30, 2008 purchase order.

Recorder by visiting Nest's manufacturing facilities and having engineers from Mistral meet with Nest." (Id. ¶ 8). Despite repeated assurances from both Mistral and Nest that the problems would be remedied, they were not, and, in April 2009, Smartvue terminated the Contract with Mistral and cancelled the purchase order with Nest.

Subsequently, Smartvue filed suit in the Chancery Court for Davidson County, Tennessee against both Mistral and Nest. With regard to Nest, Smartvue alleges common law breach of contract, and breach of express and implied warranties of merchantability and fitness for a particular purpose under the Tennessee Code. Smartvue also seeks a declaration that it was entitled to cancel the purchase orders and is not obligated to pay Nest because of Nests' failure to timely manufacture the S8 Network Video Recorder and S8 camera. After the case was removed to this Court, Nest filed the presently pending Motion to Dismiss.

## II. LEGAL DISCUSSION

In order for this Court to have personal jurisdiction over a defendant, the plaintiff must show that the defendant has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). Where, as here, the Court considers a motion to dismiss for lack of personal jurisdiction based upon the pleadings, affidavits, and other written submissions of the parties, the burden on a plaintiff is relatively slight, as the plaintiff need only make a *prima facie* showing of jurisdiction. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012); see, Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). Even under this relaxed standard, Smartvue has failed to show sufficient minimum contacts between Nest and Tennessee so as to make

jurisdiction in this Court proper and reasonable.

Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Where sufficient minimum contacts exist, a defendant has no basis to complain because, by invoking the benefit and protections of the state's law, the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

A court may have either general or specific jurisdiction over a defendant. Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 213, 218 (6th Cir. 2006). "Specific jurisdiction 'subjects the defendant to suit in the forum state only on claims that arise out of or relate to defendant's contact with the forum.'" Id. (citation omitted). That is, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction," whereas general jurisdiction is found based on contacts that "are so continuous and systematic as to render [defendant] essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2486, 2581 (2011) (citation omitted). Here, Smartvue claims that Nest is subject to the specific jurisdiction of this Court.

The exercise of specific jurisdiction over a non-resident defendant is valid only if it meets both the state long-arm statute and constitutional due process requirements. See, Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000). Thus, "if jurisdiction is not proper under the due process clause, it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice versa." Conn v. Zakharov, 667 F.3d 705, 711-12 (6th Cir. 2012).

As Smartvue notes, Tennessee's long arm statute provides for jurisdiction over claims "for

relief arising from . . . '[e]ntering into a contract for services to be rendered or for materials to be furnished in this state." Tenn. Code Ann. § 20-2-214(5). Tennessee's long-arm statute also provides for jurisdiction over claims relating to "the transaction of any business within the state." T.C.A. § 20-2-214(1). Nevertheless, "Tennessee's long-arm statute has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution," and, therefore, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (citation omitted). Because of that, "the court 'need only determine whether the assertion of personal jurisdiction violates constitutional due process.'" Id. (citation omitted).

The Sixth Circuit uses three criteria for determining whether specific jurisdiction may be exercised consistent with due process. Those criteria are: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action ... aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" Schneider v. Hardesty, 669 F.3d 693, 702 (6th Cir. 2012) (quoting, Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381-382 (6th Cir. 1968)).

The purposeful availment prong of the test is viewed by the Sixth Circuit "as 'essential' to a finding of personal jurisdiction," Intera, 428 F.3d at 616, and the question of whether a defendant availed itself of the privilege of acting in a state is determined by the defendant's actions and not the plaintiff's actions. Nationwide Mut. Ins. Co. v. TRYG Intern. Ins. Co., 91 F.3d 790, 795-96 (6th Cir. 1996). "Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the

5

consequences of their activities." Burger King, 471 U.S. at 473.

In this case, Nest is a company in India with no offices, property, or agents in Tennessee. It did not reach out to create a business relationship with Smartvue, or any other Tennessee company for that matter. Rather, Smartvue went to Nest in India to solicit its manufacture of the cameras and recorders, and was introduced to Nest by Mistral, another Indian company. Moreover, when things began to unravel, it was Smartvue that traveled to India in an effort to resolve the problem. No employees of Nest ever traveled to the United States in relation to the Smartvue matter.

"The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." Helocopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 417 (1984). Instead, "[t]he Supreme Court has emphasized with respect to interstate contractual obligations, that 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting, Burger King, 471 U.S. at 473.

To be sure, Nest agreed to manufacture the S8 Camera and S8 Network Video Recorder pursuant to one or more purchase orders sent by Smartvue, and the relationship between those entities apparently lasted for some fourteen months. However, the mere existence of an agreement between the parties and a limited relationship are not sufficient to show purposeful availment. See, Calphalon, 228 F.3d at 722 ("district court correctly recognized that the mere existence of a contract between [defendant] and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over [defendant]"); compare, Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1270 (11th Cir. 2010) ("In just six months, Food Movers purchased more than $1.9

6

million dollars worth of Splenda in fourteen transactions, each of which involved purposeful and meaningful contact by Food Movers with Georgia").

It is also true that communications were had between Smartvue and Nest, apparently by telephone, faxes and/or mail. However, such communications have "no talismanic qualities," particularly where the defendant is not "attempting to exploit any market for its products" in the state. Int'l Tech. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 395 (6th Cir. 1997); see, Harris v. Lloyds TSB Bank, PLC, 281 Fed. Appx. 489, 489 (6th Cir. 2008) (collecting cases) (no purposeful availment where communications were in response to communications initiated by plaintiff in forum state). "Rather, '[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications.'" Air Prod. & Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 551 (6th Cir. 2007) (citation omitted).

It may also be true that allegedly non-conforming goods were shipped to Tennessee because Renkis states in his declarations that "[f]rom March 13, 2009 to June 17, 2009, Nest made approximately ten separate deliveries to Smartvue in Tennesse in response to the purchase orders." (Docket No. 20, Renkis Decl. ¶ 7). "Delivery terms that provide for delivery in the forum state can support a finding of personal jurisdiction, . . . but even the provision for delivery within the forum state does not alone provide the 'minimum contacts' required by due process[.]" Jacobs Trading, LLC v. Ningbo Hicon Intern. Indust. Co., ___ F.Supp.2d ___, ___, 2012 WL 1959565 at *4 (D. Minn. May 30, 2102) (citations omitted); see, Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982) ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process.").

7

Moreover, the purchase order which has been submitted as an exhibit to Renkis's declaration indicates that the shipping was to be "FAC Cochin," (Docket No. 20-3), and the quotation provided by Nest (also attached to Renkis's declaration) indicates that shipment was to be "ex-works." (Docket No. 20-2 at 6). Those terms counsel against the notion Nest intended to avail itself of Tennessee law, since "'FCA' is an abbreviated form of 'free carrier,' which means that 'the seller delivers the goods, cleared for export, to the carrier nominated by the buyer at the named place,'" S.K.I. Beer Corp. v Batika Brewery, 612 F.3 705, 707 n.2 (2nd Cir. 2010), and "ex-works shipping" suggests that Nest "satisfied the delivery requirement under the contract when it placed the goods at the disposal of the buyer, either at [Nest's] factory or some other agreed upon location." Semi-Material Co., Ltd. v. MEMC Elect. Materials, Inc., 655 F.3d 829, 832 (8th Cir. 2011). See, Bellisio Foods, inc. v. Prodo Pak Corp., 2008 WL 4867352 at *7 (D. Minn. Nov. 4, 2008) (where defendant offered to sell machine to plaintiff "'f.o.b.' or 'ex works' Garfield, New Jersey," defendant was obligated to deliver machine there and not elsewhere; "machine's ultimate destination was . . . a matter of indifference" to defendant; and defendant "did not expect to be haled into court outside New Jersey").

The issue of purposeful availment aside, for the exercise of jurisdiction to be proper, "there must be substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Schneider, 669 F.3d at 702. "Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." Intera Corp., 428 F.3d at 618.

There is no doubt that Smartvue has an interest in obtaining relief, and no doubt Tennessee has an "interest in protecting its residents' legal options." Youn, 324 F.3d at 419 (citation omitted). On the other hand, Nest "would be substantially burdened if [it was] compelled to litigate this case in Tennessee given the fact that [it does not] resides in the state." Id. This is all the more so since Nest is a foreign corporation, and the Supreme Court has stated that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi Metal Indus. Co. v.Super. Ct. of Calif., 480 U.S. 102, 115 (1987). Indeed, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id.; see, Conn v. Zakharov, 667 F.3d 705, 720 (6th Cir. 2012) ("burden on Zakharov to defend this action in Ohio is heavy because he lives in Russia and would have to travel around the world to engage in litigation"); compare, Aristech Chem Intern. Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 628 (6th Cir. 1998) (upholding personal jurisdiction over Canadian defendant, and observing that "only a short plane flight separates Ontario from Kentucky. This is not a case where the exercise of jurisdiction requires a company to travel from the other side of the world.").

Ultimately, "'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" Youn, 324 F.3d at 419. Based upon everything that has been presented, the Court finds that Nest did not purposefully avail itself of the privilege of acting in Tennessee, and it would not be reasonable to exercise jurisdiction over Nest given its wholly insubstantial connection with Tennessee.

### III. CONCLUSION

On the basis of the foregoing, the Court will grant Nest's Motion to Dismiss (Docket No. 10) insofar as its seeks dismissal from this action for lack of personal jurisdiction.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE